**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MARCELLO VALLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 23-cv-14534 |
| v. ) | |
| ) | The Hon. Judge |
| CITY OF CHICAGO, ILLINOIS, and ) | |
| ANNETTE NANCE-HOLT, in her individual ) | |
| capacity, BRIAN CASEY, in his individual capacity, ) | |
| PAUL COGSWELL, in his individual capacity, ) | |
| ) | |
| Defendants. ) | **Jury Trial Demanded** |

**COMPLAINT**

MARCELLO VALLE (Plaintiff or Marcello), by and through his undersigned counsel, Cass

T. Casper, DISPARTI LAW GROUP, P.A., states as follows against the City of Chicago, Illinois

(City) ANNETTE NANCE-HOLT, in her individual capacity (Nance-Holt), BRIAN CASEY

(Casey), in his individual capacity, and PAUL COGSWELL (Cogswell), in his individual capacity,

(collectively, Defendants).

**JURISDICTION AND VENUE**

1.  Jurisdiction of this court arises under 28 U.S.C. §§ 1331 and 1337 and the Fourteenth

Amendment of the United States Constitution.

2.  This Court has supplemental jurisdiction over the pendant state law claims pursuant to 28

U.S.C. § 1367 providing that the district courts shall have supplemental jurisdiction over all other

claims that are so related to claims in the action within such original jurisdiction that they form part

of the same case or controversy.

3.  Jurisdiction to award attorney's fees arises under at least 42 U.S.C. § 1988.

4.  Venue is proper under 28 U.S.C. § 1391 because the events giving rise to the claims herein

have occurred in this judicial district, and because Defendant operates within this judicial district.

**PARTIES**

5.  Marcello Valle at all times relevant is a resident of this judicial district and is a former employee of Defendant.

6.  The City is a municipal corporation under the laws of the state of Illinois and is Plaintiff's former employer.

7.  Nance-Holt is the Fire Commissioner for the City of Chicago and is a final policymaker for Defendant and the Chicago Fire Department.

8.  At all times relevant, Nance-Holt acted under color of law by terminating Plaintiff under the auspices of City policy and purportedly pursuant to her job duties, but, in reality, in violation of Plaintiff's rights to be free from religious discrimination as outlined herein.

9.  Casey is an Assistant Commissioner of Labor Relations with the Bureau of Administrative Services for the City of Chicago Fire Department.

10. At all times relevant, Casey acted under color of law by investigating Plaintiff, recommending his termination, and acting in concert with the other Defendants to terminate him, all under the auspices of City policy and purportedly pursuant to his job duties, but, in reality, in violation of Plaintiff's rights to be free from religious discrimination as outlined here.

11. Cogswell is an Assistant Commissioner with the Internal Affairs Division of the Chicago Fire Department.

12. At all times relevant, Cogswell acted under color of law by investigating Plaintiff, recommending his termination, and acting in concert with the other Defendants to terminate him, all under the auspices of City policy and purportedly pursuant to his job duties, but, in reality, in violation of Plaintiff's rights to be free from religious discrimination as outlined here.

**FACTS COMMON TO ALL COUNTS**

13. Plaintiff began his employment with Defendant on or about December 3, 2018 as a

firefighter/EMT.

14. In or about October 2021, a document titled "City of Chicago COVID-19 Vaccination Policy" began circulating throughout the CFD that purported to represent a policy of Defendant outlining, *inter alia*, vaccination, testing, and testing reporting requirements for all City employees.

15. The document required, *inter alia*, employees to be vaccinated or to undergo periodic testing for COVID-19, and to report their vaccination status, or otherwise to obtain a medical or religious exemption from testing and reporting.

16. The document also required employees to report their vaccination status and testing results.

17. On or about February 28, 2022, Plaintiff submitted a request for religious exemption to Defendant, asserting that his bona fide Christian beliefs prevented him from complying with the COVID-19 Policy.

18. At all times, Plaintiff has had sincerely-held Christian beliefs.

19. Plaintiff believes consistently with his truly-held religious belief that he is not to be vaccinated, but to rely on his God-given immune system, and that he is not to comply with man-created systems relating to the COVID vaccine, including testing and otherwise taking actions that would undermine and be inconsistent with his belief that the one true God has given humankind all that is necessary and that is supposed to be given naturally to cope with COVID-19, and that relying on or following the City's Policy contravenes these religious mandates from Plaintiff's creator.

20. Defendants granted Plaintiff's request for a religious exemption on or about May 3, 2022 as follows:

| City of Chicago<br>COVID-19 VACCINE EXEMPTION DETERMINATION NOTICE | |
|---|---|
| **EMPLOYEE INFORMATION** | |
| **Name:** Marcello Valle | |
| **Department:** CFD | |
| **Job Title:** Firefighter/EMT | |
| **Request Number:** VAX-3862 | |
| **DETERMINATION** | |

Dear Employee:

Your request for a religious exemption from the City of Chicago's Mandatory COVID-19 Vaccination Policy has been:

☒    Approved

☐    Denied

21. As noted above, the religious exemption applied to <u>the entire Policy, as a whole.</u>

22. Despite his exemption from the Policy as a whole, Defendants nonetheless terminated Plaintiff for not complying with the Policy.

23. Plaintiff was first made aware that he was terminated on or about November 25, 2022, with an official termination date of October 25, 2022.

**COUNT 1: RELIGIOUS DISCRIMINATION IN VIOLATION OF THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION VIA 42 U.S.C. § 1983**
(Plaintiff v. Individual Defendants)

24. Plaintiff realleges, restates, and incorporates by reference herein paragraphs 1 through 23 of this complaint as if fully set forth herein.

25. The 14th Amendment protects from religious discrimination, including in the employment context. *See, e.g.*, *Rice v. City of Kendallville*, 2009 WL 857463 (N.D. Ind. 2009).

26. At all times, Plaintiff has had a sincerely-held religious belief requiring his exemption from the COVID-19 Policy, including vaccination, testing, and all other aspects of the Policy.

27. Plaintiff requested a religious exemption, Defendants granted it, but then terminated him

anyway for not following the same Policy from which Plaintiff had been exempted.

28. Defendants terminated Plaintiff's employment for failure to comply with the Policy.

29. The City has violated Plaintiff's right to be free from religious discrimination under the Equal Protection Clause by granting his religious exemption request from the COVID-19 Policy as a whole, and then terminating him for not following the Policy.

30. Defendants' termination selectively burdens and discriminates against Plaintiff's religious beliefs because the termination and the COVID-19 Policy was not generally applicable.

31. The Policy is not generally applicable because in late 2021 and throughout 2022 numerous fire teams were asked to report their COVID-19 status and to be vaccinated, such teams refused, and the City did not terminate employees on such teams.

32. Plaintiff was terminated for violating the Policy, while other non-compliant fire employees were not terminated for the same conduct who did not share Plaintiff's religious beliefs.

33. So too, at all times, any vaccination and testing requirement presents a burden on Plaintiff's exercise of religion by impinging on his beliefs that (i) God has given humans bodily autonomy, (ii) God has given an immune system that is requisite on its own as a shield against illness (including COVID-19), and (iii) relying on human-imposed mandates with respect to COVID-19, including testing, acts over and above the God-given immune systems, constitutes a breach of faith between Plaintiff and God, for example, that Plaintiff cannot rely on God's created immune-systems as keeping him safe as a matter of faith, rather than as a matter of testing.

34. Termination of Plaintiff is not the least restrictive means of furthering any governmental interest in controlling COVID-19 and protecting the public, as less restrictive means exist to vindicate any such interest, including: (i) social distancing, (ii) masking, (iii) sanitizing requirements, (iv) increasing ventilation throughout Plaintiff's workspaces, (v) advanced respiratory protection beyond masking, (vi) paid or unpaid leave, (vii) mandate that employee be off work after

exposure to a COVID-19 positive individual, (viii) other alternatives to be put forth in discovery and ongoing investigation, and (ix) allowing Plaintiff to identify and find other coworkers who agree to work with an unvaccinated coworker. [1]

35. Based upon Plaintiff's termination, the City failed to reasonably accommodate his sincerely-held religious beliefs as articulated at least in his Exemption Request, and discriminated against him because of his religious beliefs.

36. No undue hardship exists that would prevent the City from reasonably accommodating Plaintiff on religious grounds.

37. By Defendant City's action in terminating him, Plaintiff has lost all benefits and emoluments of employment, including job loss, lost pay, and lost benefits.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendants, and enter and order all available and appropriate relief with interest, including special and compensatory damages as determined by a jury, reinstatement, back pay, back benefits, reasonable attorneys' fees, court and litigation costs, and such other relief as this Court deems just and proper.

## COUNT 2: DEPRIVATION OF FIRST AMENDMENT RIGHT TO FREELY EXERCISE RELIGION VIA 42 U.S.C. § 1983
(Plaintiff v. Individual Defendants)

38. Plaintiff realleges, restates, and incorporates by reference herein paragraphs 1 through 23 of this complaint as if fully set forth herein.

39. The First Amendment's Free Exercise Clause provides that no law will prohibit the free expression of religion. U.S. Const. amend. I.

---

[1] An analogous proposal was found to be a less restrictive means in *Thomas v. Maricopa County Community College District*, 2021 WL 5162538 (D. Ariz. 2021) in the education context involving swapping vaccinated and unvaccinated students. *Id.* at *8.

40. "The Free Exercise Clause, however, is not absolute: laws that incidentally burden particular religious practices do not violate the Free Exercise Clause as long as they are neutral and generally applicable." *Filinovich v. Claar*, 2006 WL 1994580, *3 (N.D. Ill. 2006).

41. "[F]acially neutral rules that have the practical effect of covertly suppressing particular religious beliefs" are prohibited by the Free Exercise Clause of the First Amendment. *Filinovich* at *4; *Bowen v. Roy*, 476 U.S. 693, 703 (1986). "Thus, if a rule adversely impacts only the practices or beliefs of a particular group, without identifying any legitimate purpose for the rule, the rule is not neutral." *Id.* (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993). "In a similar vein, laws are not generally applicable if they selectively impose burdens only on conduct that is motivated by religious beliefs." *Id.*

42. "[T]he Free Exercise Clause [ ] recognizes the value of religious training, teaching and observance and, more particularly, the right of every person to freely choose his own course with reference thereto, free of any compulsion from the state." *Sch. Dist. of Abington Township, Pennsylvania v. Schempp*, 374 U.S. 203, 222 (1963). Consequently, government actors are prohibited from exerting "any restraint on the free exercise of religion." *Id.* at 222-23. To state a claim under the Free Exercise clause, plaintiffs "must show the coercive effect of the enactment [or government invasion] as it operates against [her] in the practice of [her] religion." *Id.* at 223; *see also Harless v. Darr,* 937 F. Supp. 1339, 1347 (S.D.Ind.1996); *Olojo v. Kennedy-King Coll.*, No. 05 C 6234, 2006 WL 1648441, at *5 (N.D. Ill. June 7, 2006).

43. "Under the least restrictive means test, the government must show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Brush & Nib Studio, LC*, 448 P.3d at 923 (internal quotation marks omitted). The government need not show that there are no "conceivable" less restrictive means, "but only that the proposed alternatives are ineffective or impractical." *Id.* (internal quotation marks omitted).

"This is a focused inquiry, requiring the government to establish that applying the law in the *particular circumstances* is the least restrictive means." *Id.* (internal quotation marks omitted). This standard amounts to "the most demanding test known to constitutional law." *City of Boerne v. Flores*, 521 U.S. 507, 534, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997); *Thoms v. Maricopa Cnty. Cmty. Coll. Dist.*, No. CV-21-01781-PHX-SPL, 2021 WL 5162538, at *7 (D. Ariz. Nov. 5, 2021)

44. In *Troogstad v. City of Chicago*, 571 D.Supp.3d 901, 917 (N.D. Ill. 2021), the Court stated that "if a particular employee is denied a religious exemption, she may challenge that denial, based on the particular facts of the her case, as a violation of her free exercise rights."

45. The document titled "City of Chicago COVID-19 Vaccination Policy" was applied to Plaintiff, who has a sincerely-held religious belief.

46. The Defendants' termination selectively burdens and discriminates against Plaintiff's religious beliefs because it is not generally applicable and because in late 2021 and throughout 2022 numerous fire teams were asked to report their COVID-19 status and to be vaccinated, such teams refused to do so, and the City did not terminate employees on such teams despite that they did not have the bona fide religious beliefs of Plaintiff.

47. Plaintiff was terminated, despite being granted an exemption, for not following the Policy while other employees without his religious beliefs were not terminated.

48. So too, at all times, any testing requirement presents a burden on Plaintiff's exercise of religion by impinging on his beliefs that (i) God has given humans bodily autonomy, (ii) God has given an immune system that is requisite on its own as a shield against illness (including COVID-19), and (iii) relying on human-imposed mandates with respect to COVID-19, including testing, acts over and above the God-given immune systems, constitutes a breach of faith between Plaintiff and God, for example, that Plaintiff cannot rely on God's created immune-systems as keeping him safe as a matter of faith, rather than as a matter of testing.

49. Termination of Plaintiff is not the least restrictive means of furthering any governmental compelling interest in controlling COVID-19 and protecting the public as less restrictive means exist to vindicate any such interest, including: (i) social distancing, (ii) masking, (iii) sanitizing requirements, (iv) increasing ventilation throughout Plaintiff's workspaces, (v) advanced respiratory protection beyond masking, (vi) paid or unpaid leave, (vii) mandate that employee be off work after exposure to a COVID-19 positive individual, (viii) other alternatives to be put forth in discovery and ongoing investigation, and (ix) allowing Plaintiff to identify and find other coworkers who agree to work with an unvaccinated coworker.

50. Based upon Plaintiff's termination, the City failed to reasonably accommodate his sincerely-held religious beliefs.

51. No undue hardship exists that would prevent the City from reasonably accommodating Plaintiff on religious grounds.

52. By Defendant City's action in terminating him, Plaintiff has lost all benefits and emoluments of employment, including job loss, lost pay, and lost benefits.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendants, and enter and order all available and appropriate relief with interest, including special and compensatory damages up to $300,000 or as determined by a jury, reinstatement, back pay, back benefits, reasonable attorneys' fees, court and litigation costs, and such other relief as this Court deems just and proper.

## COUNT 3: DECLARATORY JUDGMENT THAT PLAINTIFF'S TERMINATION IS UNLAWFUL
(Plaintiff v. Defendant City of Chicago)

53. Plaintiff realleges, restates, and incorporates by reference herein paragraphs 1 through 23 of this complaint as if fully set forth herein.

54. Illinois statute authorizes courts to make "binding declarations of rights, having the force

of final judgments. . ." 735 ILCS 5/2-701, *et seq.*

55. In or about October 2021, a document titled "City of Chicago COVID-19 Vaccination Policy" began circulating among City of Chicago employees and officials as purportedly City policy. The document bears no indicia of lawful enactment or signature, is as follows:

**City of Chicago COVID-19 Vaccination Policy**

I.    **Purpose**

Consistent with its duty to provide and maintain a workplace that is free of recognized hazards, the City of Chicago ("City") has adopted this policy to safeguard the health and well-being of employees, and the residents that spend time in our facilities or interact with City employees as they receive City services. This policy is intended to comply with all federal, state, and local laws. All employees must continue to comply with any applicable safety requirements related to COVID-19.

II.   **Scope and Applicability**

This Policy applies to all City employees, personnel of contractors and vendors who have regular direct contact with, or regularly work in close proximity to, City employees, and volunteers. It does not apply to visitors.

III.  **Limitations**

Nothing in this Policy is intended to nor shall be construed to provide a private right of action against the City or any of its employees. Furthermore, no part of this Policy shall be construed to create contractual or other rights, obligations, or expectations.

IV.   **Policy**

A. Effective October 15, 2021, City employees, as a condition of employment, and personnel of contractors and vendors as outlined in Section II., must either be fully vaccinated against COVID-19 or undergo COVID-19 testing as set forth in Section IV.B. You are considered fully vaccinated 14 days after receiving the final dose of a two-shot vaccine (Moderna or Pfizer) or a dose of a one-shot vaccine (Johnson & Johnson). All City employees who are fully vaccinated by October 15, 2021 shall receive one (1) personal day that must be used by June 30, 2022. The personal day granted by this Policy shall not count toward the carryover day limit contained in an employee's applicable collective bargaining agreement.

B. Employees, volunteers, and contractors who are covered by this policy who are not vaccinated, for reasons including but not limited to verified medical conditions or restrictions or sincerely held religious beliefs (as discussed in Section VI), must undergo COVID-19 testing on a twice weekly basis with tests separated by 3-4 days. Employees shall be responsible for obtaining tests on their own time and at no cost to the City and reporting those results in the manner described by Section VII below. This testing option will sunset on December 31, 2021. Thereafter, employees, volunteers, and contractors covered by this policy must be fully vaccinated as a condition of employment unless they have received an accommodation as described in Section VI below.

C. Employees who are not fully vaccinated by December 31, 2021, unless they have received an approved exemption as described in Section VI will be placed in a non-disciplinary no-pay status until they have become fully vaccinated.

D. Employees, volunteers, and contractors covered by this Policy with a medical condition or other medical restrictions that affects their eligibility for a vaccine, as verified by their medical

11

provider, or those employees with a sincerely held religious belief that prohibits them from receiving a vaccine, may request a reasonable accommodation as described in Section VI below.

E. Violations of this policy, including but not limited to, non-compliance with this Section; or providing false or misleading information about vaccination status, test results, or the need for an accommodation; or the failure to test as applicable as discussed in Section VII, will result in disciplinary action up to and including discharge.

## V. Proof of Vaccination

A. Employees who receive a vaccination are responsible for scheduling and obtaining all recommended doses of an FDA-approved COVID-19 vaccine, a COVID-19 vaccine granted Emergency Use Authorization by the FDA, or the World Health Organization (WHO). Employees shall receive two (2) hours of paid leave time for each required dose of a COVID-19 vaccine.

B. All employees, volunteers, and contractors who are covered by this policy must report their vaccination status through the COVID-19 Vaccination Portal no later than October 15, 2021 , with the following information:
- The type of vaccine obtained (Moderna, Pfizer, or Johnson & Johnson);
- Date of first dose of vaccine;
- Date of second dose of vaccine for a two-shot vaccine;
- Declaration that the information submitted is true and correct; and
- Documentation verifying proof of vaccination status. Proof of vaccination can include a copy of the CDC COVID-19 Vaccination Record Card, documentation of vaccine from the employee's healthcare provider, or documentation issued by the State of Illinois by going to https://idphportal.illinois.gov.

C. Employees hired by the City after the effective date of this policy must be fully vaccinated by their date of hire or submit to the regular testing protocol outlined in Section IV, as a condition of employment. Proof of vaccination will be required prior to the employee's start date unless the employee has received an accommodation as outlined in Section VI of this Policy. New hires who are not fully vaccinated at the time of hire, and have not received an accommodation as outlined in Section VI, must submit to regular testing outlined in section IV until they are fully vaccinated. Failure of newly hired employees to become fully vaccinated will result in their termination from employment unless they have received an accommodation as outlined in Section VI.

D. Any employee who becomes fully vaccinated after October 15, 2021 must report their change in vaccination status in the manner prescribed in Section V.B. above within three (3) business days.

E. In cases where the City has reason to believe that the vaccination information provided by the employee was not true or accurate, an employee may be required to submit verification of vaccination from a state immunization information system.

F. Employees who have not reported their vaccination status by October 15, 2021 will be placed in a non-disciplinary no-pay status until they have reported their vaccination status.

G. All employees must continue to comply with masking, testing, and other safety requirements as outlined in other City policies and directives.

VI. **Accommodations**

    A. Disability and Medical Accommodations
        1. In accordance with the City's Reasonable Accommodation Policy, the City provides reasonable accommodations to qualified persons with a disability that enables them to perform the essential functions of their job unless such an accommodation would create an undue hardship or the accommodation would result in a direct threat to the health and safety of the employee or others. Requests for accommodations will be made on a case-by-case basis consistent with existing procedures for reasonable accommodation requests.
        2. Employees who believe they need an accommodation regarding this policy because of a disability or a medical condition may request a reasonable accommodation through the Department of Human Resources. A form for requesting such an accommodation is attached to this policy as Exhibit A.
    B. Religious Accommodations
        1. The City provides religious accommodations to employees with sincerely held religious beliefs unless such an accommodation would create an undue hardship. Requests for accommodations will be made on a case-by-case basis consistent with existing procedures for reasonable accommodation requests.
        2. Employees who believe they need an accommodation regarding this policy because of a sincerely held religious belief may request a reasonable accommodation through the Department of Human Resources. A form for requesting such an accommodation is attached to this policy as Exhibit B.

VII. **Reporting Test Results**

    A. Employees, volunteers, and contractors who are covered by this policy who are not fully vaccinated by October 15, 2021, for reasons including but not limited to verified medical conditions or restrictions or sincerely held religious beliefs (as discussed in Section VI), shall be required to undergo COVID-19 testing on a twice weekly basis with tests separated by 3-4 days. Employees shall be responsible for obtaining tests on their own time and at no cost to the City.
    B. Employees must report their test results through the COVID-19 Employee Testing Portal. Employees will be required to submit the following information:
        1. The date of the test;
        2. The type of test obtained;
        3. The results of the test;
        4. A declaration that the information provided is true and accurate; and,
        5. A copy of their test results.
    C. In cases where the City has reason to believe that the testing information provided by the employee was not true or accurate, an employee may be required to provide additional information, including but not limited, a written statement describing the testing process.
    D. Employees who fail to report test results as required by this section will be placed in a non-disciplinary no-pay status until they report their test results.

VIII. **Vaccination Encouragement**

    The City and signatory unions agree to encourage and support the vaccination of City employees.

**IX.     City of Chicago Sick Leave Policy Addendum**

The City of Chicago Sick Leave Policy Addendum, attached to this policy as Exhibit C, shall remain in effect until March 31, 2022.

**X.     Non-Retaliation**

The City prohibits retaliation against any employee seeking an accommodation as outlined in Section VI. The City further prohibits retaliation for reporting violations of this policy or any other health and safety concern. Employees have the right to report work-related injuries and illnesses and the City will not tolerate retaliation against employees for reporting work-related injuries or illnesses or good faith health and safety concerns.

**XI.     Policy Modification**

The parties recognize that public health guidelines regarding COVID-19 and COVID-19 vaccines are rapidly changing as new information becomes available, further research is conducted, new variants develop and new preventative measures become available. As a result, it is appropriate that representatives of Labor and Management continue to meet and discuss the City's response to COVID-19 and this Policy. Upon request, the parties will establish a working group to discuss the results of the mandatory vaccination of employees. The working group may consider available science, public health data, vaccination rates of both City employees and residents, positivity rates of COVID-19, the availability and/or need for booster shots and testing. This working group may make recommendations related to the Policy which will be considered by the City. The working group will be comprised of three representatives of the labor unions and three representatives appointed by the City, one of whom will be a health care professional from the Chicago Department of Public Health and shall meet monthly, unless the working group mutually agree to meet more or less frequently. The City and the Unions reserve the right to seek modification of this policy to adapt to changing circumstances and business needs consistent with their commitment to maintaining a safe and healthy workplace.

56.  The City of Chicago COVID-19 Vaccination Policy has not been validly-enacted as policy by any government official or body with power to enact it.

57.  The Mayor did not issue the City of Chicago COVID-19 Vaccination Policy by executive order.

58.  The City Council did not pass the document titled City of Chicago COVID-19 Vaccination

Policy.

59. The Department of Public Health did not enact the document titled City of Chicago
COVID-19 Vaccination Policy.

60. The CFD did not enact the document titled City of Chicago COVID-19 Vaccination
Policy and, indeed, it could not do so because the document on its face purports to apply to all City
employees.

61. The Department of Human Resources did not pass the document titled City of Chicago
COVID-19 Vaccination Policy.

62. No other governmental body or official took action to enact the document titled City of
Chicago COVID-19 Vaccination Policy as bona fide City policy.

63. There is no signed version of the policy showing who enacted it, at least that Plaintiff has
ever seen.

64. Instead, the City of Chicago COVID-19 Vaccination Policy has merely been circulated
and represented as City policy, but without it having any lawful pedigree from a source with power
to create new terms and conditions of employment for Chicago employees.

65. That is, the document titled City of Chicago COVID-19 Vaccination Policy is little more
than a document with words on it being used as City policy when, in fact, no legal authority has
properly passed, pronounced, or enacted the document as City policy through lawful means.

66. This same document called the City of Chicago COVID-19 Vaccination Policy was used
as the basis to terminate Plaintiff, yet the document itself has not been duly enacted by any
appropriate authority within the City of Chicago as *bona fide* policy.

67. Without a lawful pedigree, the document is not *bona fide* City policy, and cannot be used
as a basis to terminate Plaintiff.

68. Plaintiff has a tangible interest in the outcome of this suit in that he lost his employment,

salary, and benefits on the basis of the document titled City of Chicago COVID-19 Vaccination Policy.

69. Defendant City has an opposing legal interest in the outcome of this suit in that it terminated Plaintiff, seeks to maintain his termination, and, presumably, seeks to defend the legal validity of the document titled City of Chicago COVID-19 Vaccination Policy.

70. Plaintiff suffered damages as a result of Defendant City applying the document titled City of Chicago COVID-19 Vaccination Policy to him, including lost pay and benefits.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendant, declare that Plaintiff's termination is unlawful because the document titled City of Chicago COVID-19 Vaccination Policy has no lawful pedigree and was not lawfully applied to support Plaintiff's termination as a result, and enter and order all available legal and equitable relief, including reinstatement, back pay, back benefits, reasonable attorneys' fees, court and litigation costs, and such other relief as this Court deems just and proper.

## COUNT 4: ILLINOIS RELIGIOUS FREEDOM RESTORATION ACT
(Plaintiff v. All Defendants)

71. Plaintiff restates, realleges, and incorporates by reference herein Paragraphs 1 through 23 inclusive as if fully restated in this Count.

72. Illinois' Religious Freedom Restoration Act (IRFRA), 775 ILCS 35/1, *et seq.*, provides that "Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest." 775 ILCS 35/15.

73. IRFRA further provides that "If a person's exercise of religion has been burdened in

violation of this Act, that person may assert that violation as a claim or defense in a judicial

proceeding and may obtain appropriate relief against a government. A party who prevails in an

action to enforce this Act against a government is entitled to recover attorney's fees and costs

incurred in maintaining the claim or defense." 775 ILCS 35/20.

74. The City's termination selectively burdens and discriminates against Plaintiff's religious

beliefs because the termination and the COVID-19 Policy was not generally applicable.

75. The Policy is not generally applicable because in late 2021 and throughout 2022 numerous

fire teams were asked to report their COVID-19 status and to be vaccinated, such teams refused to

do so, and the City did not terminate employees on such teams.

76. Plaintiff was terminated for not following the same Policy from which he had been

exempted on religious grounds, while other non-complying fire employees were not terminated who

did not share his religious beliefs.

77. So too, at all times, any testing requirement presents a burden on Plaintiff's exercise of

religion by impinging on his beliefs that (i) God has given humans bodily autonomy, (ii) God has

given an immune system that is requisite on its own as a shield against illness (including COVID-

19), and (iii) relying on human-imposed mandates with respect to COVID-19, including testing, acts

over and above the God-given immune systems, constitutes a breach of faith between Plaintiff and

God, for example, that Plaintiff cannot rely on God's created immune-systems as keeping him safe

as a matter of faith, rather than as a matter of testing.

78. Termination of Plaintiff is not the least restrictive means of furthering any

governmental compelling interest in controlling COVID-19 and protecting the public as less

restrictive means exist to vindicate any such interest, including: (i) social distancing, (ii) masking, (iii)

sanitizing requirements, (iv) increasing ventilation throughout Plaintiff's workspaces, (v) advanced

respiratory protection beyond masking, (vi) paid or unpaid leave, (vii) mandate that employee be off

17

work after exposure to a COVID-19 positive individual, (viii) other alternatives to be put forth in discovery and ongoing investigation, and (ix) allowing Plaintiff to identify and find other coworkers who agree to work with an unvaccinated coworker.

79. Based upon Plaintiff's termination, the City failed to reasonably accommodate his sincerely-held religious beliefs and discriminated against him for his religious beliefs.

80. No undue hardship exists that would prevent the City from reasonably accommodating Plaintiff on religious grounds.

81. By Defendant City's action in terminating him, Plaintiff has lost all benefits and emoluments of employment, including job loss, lost pay, and lost benefits.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor, and against Defendants, and enter and order all available and appropriate relief with interest, including special and compensatory damages up to $300,000 or as determined by a jury, reinstatement, back pay, back benefits, reasonable attorneys' fees, court and litigation costs, and such other relief as this Court deems just and proper.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court grant judgment in his favor on all counts and order the relief sought herein.

## JURY DEMANDED AS TO ALL COUNTS

Respectfully submitted,

**MARCELLO VALLE**

By:     /s/ *Cass T. Casper*

_____

His Attorney

*Cass T. Casper, Esq.*
DISPARTI LAW GROUP, P.A.
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601

P: (312) 506-5511 ext. 331
E: ccasper@dispartilaw.com