UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARCELLO VALLE, ) | |
| ) | |
| Plaintiff, ) | Case No. 23-cv-14534 |
| v. ) | |
| ) | Honorable Judge Edmond E. Chang |
| CITY OF CHICAGO, Illinois, ) | |
| ANNETTE NANCE-HOLT, in her ) | |
| Individual capacity, BRIAN CASEY, ) | |
| in his individual capacity, PAUL ) | |
| COGSWELL, in his individual capacity, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff is a former employee of the City of Chicago (the "City") who alleges the City violated the First Amendment's Free Exercise Clause, the Fourteenth Amendment Equal Protection Clause, and the Illinois Religious Freedom Restoration Act ("IRFRA") by implementing a COVID-19 Vaccination Policy ("Policy") that required all employees to be fully vaccinated or to undergo periodic testing for COVID-19 and to report their vaccination status into the City's Vaccination Portal ("Portal"). Plaintiff further alleges the City lacked the Authority to adopt the Policy.

Plaintiff's Complaint should be dismissed because it fails to state a claim under the Free Exercise Clause, Equal Protection Clause or IRFRA. The Policy allowed for both religious and medical exemptions, and the Seventh Circuit has determined it does not conflict with the Free Exercise Clause or Equal Protection Clause on its face. Additionally, because Plaintiff was granted a religious exemption from the vaccine mandate, he cannot state a constitutional or IRFRA claim as applied. Plaintiff was terminated from his employment with the City for his continued failure to comply with the Portal's reporting requirements of the Policy, which were required of all employees regardless of religious belief or exemption status, and which Plaintiff had no religious objection to.

Additionally, the Illinois' Tort Immunity Act shields the City from any liability, and qualified immunity protects the individually named defendants from liability.

### FACTUAL BACKGROUND[1]

**A. The City's Vaccination Policy**

In October 2021, the City instituted a COVID-19 Policy[2] that outlined vaccination and reporting requirements for all City employees. (Compl. ¶14). The Policy required employees to be vaccinated or undergo periodic testing for COVID-19. (Compl. ¶¶15, 55 (Section IV)). Employees in need of an accommodation due to a disability or medical condition or based on a sincerely held religious belief could seek an exemption. (Compl. ¶ 55 (Section VI)).

In addition to requiring all employees without a religious exemption be vaccinated, the Policy required all City employees to "report their vaccination status through the COVID-19 Vaccination Portal no later than October 15, 2021." (*Id.*, Section V.B) Employees who failed to provide this information into the Portal by October 15, 2021 would be placed in a non-disciplinary, no pay status. (*Id.*, Section V.F).

The Policy also required employees to report their test results using the Portal. Section VII of the Policy, which is titled "Reporting Test Results," states in relevant part:

> A. Employees, volunteers, and contractors who are covered by this policy who are not fully vaccinated by October 15, 2021, *for reasons including but not limited to verified medical conditions or restrictions or sincerely held religious beliefs* (as discussed in Section VI), shall be required to undergo COVID-19 testing on a twice weekly basis with tests separated by 3-4 days. Employees shall be responsible for obtaining tests on their own time and at no cost to the City.
>
> B. *Employees must report their test results through COVID-19 Employee Testing Portal.*

(*Id..*, Section VII.A-B) (emphasis added). Employees who received a medical or religious accommodation to the vaccination requirement are still required to comply with the Portal

---

[1] For purposes of this Motion only, the City assumes the truth of Plaintiff's well-pleaded facts but not threadbare legal conclusions or conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
[2] The COVID-19 Vaccination Policy is set forth in full at Paragraph 55 of the Complaint.

reporting requirements. (*Id.,* Section V.B,F, VII.A-B). The Policy made clear that violations "will result in disciplinary action up to and including discharge." (*Id.,* Section IV.E.).

### B. The City's Approval of Plaintiff's Religious Exemption Request, and the Termination of His Employment

As alleged, Plaintiff requested a religious exemption from the vaccination mandate on February 28, 2022. Plaintiff alleges his "truly held religious belief is he is not to be vaccinated, but to rely on his God-given immune system." (Compl. ¶19). Plaintiff does not allege that he sought or received any religious exemption from the reporting or testing requirements of the Policy. Plaintiff's exemption request was granted on May 3, 2022. (Compl. ¶20). Plaintiff included the top portion of the City's Determination Notice granting this exemption, but conveniently and disingenuously omitted the bottom portion of the document, which explicitly stated "The employee will be required to comply with masking, social distancing, and testing requirements until further notice." See Exhibit A, Vaccine Exemption Determination Notice[3]. Instead, Plaintiff in direct contradiction of the very document that he cites and provides an image of, alleges "the religious exemption applied to the entire Policy, as a whole." (Compl. ¶21). Plaintiff alleges he was discharged on October 25, 2022 for not complying with the Policy. (Compl. ¶¶22, 23).

### ARGUMENT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint unless it pleads facts, accepted as true, that are sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also McReynolds v.*

---

[3] This Court may consider documents that are alleged in the pleading and central to the claim without converting the Motion to a Motion for Summary Judgment, particularly whereas here, Plaintiff has included an incomplete image of the document in paragraph 20 of his Complaint. See *188 LCC v. Trinity Industries Inc.,* 300 F.3d 730, 735 (7th Cir. 2002).

*Merrill Lynch & Co., Inc.*, No. 08-cv-6105, 2011 WL 1196859, *2 (N.D. Ill., Mar. 29, 2011). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint's factual allegations must "allow[] the court to draw the reasonable inference" that the defendant engaged in the conduct alleged and violated the law. *Id*. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679. And if the facts pled allow for an "obvious alternative explanation" for the defendant's conduct, the plaintiff has not plausibly alleged a violation of the law. *Id*. at 682.

## I. PLAINTIFF DOES NOT STATE A VIABLE FREE EXERCISE CLAIM
### A. The Policy on its Face Does Not Violate the Free Exercise Clause

The Complaint fails to state a claim that the Policy violated the Free Exercise Clause. (Compl. ¶¶ 38-52) When a religiously neutral and generally applicable law incidentally burdens free exercise rights, the law need only be rationally related to a legitimate governmental interest to withstand a challenge. See *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1876 (2021) (*citing Emp. Div., Dept. of Human Res. of Oregon v. Smith*, 494 U.S. 872, 878–82 (1990)). "[T]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that [her] religion prescribes (or proscribes).'" *Smith*, 494 U.S. at 897.

The "[g]overnment fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton*, 141 S. Ct. at 1877. To be generally applicable, a law may not selectively burden religiously motivated conduct while exempting comparable secularly motivated conduct. *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 543 (1993). A "neutral law of general applicability is constitutional if it is

4

supported by a rational basis." *Ciseneroz v. City of Chicago*, No. 21-CV-5818, 2021 WL 5630778, *3 (N.D. Ill. Dec. 1, 2021); *Ill. Bible Coll. Assoc. v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2017).

The Seventh Circuit has already held that the Policy, on its face, does not impermissibly burden the free exercise of religion because it is neutral towards religion and provides a process for exempting from its requirements employees with sincere religious beliefs. *Lukaszczyk v. Cook Cnty.*, 47 F.4th 587, 605-07 (7th Cir. 2022), *cert. denied sub nom. Troogstad v. City of Chicago,* No. 22-461, 2023 WL 192006 (U.S. Jan. 17, 2023); *Ciseneroz,* 2021 WL 5630778 *3 (finding City's COVID-19 Vaccination Policy to be neutral and generally applicable); *see also Klaassen v. Tr. of Ind. Univ.*, 2021 WL 3073926, at *25, *aff'd*, 7 F.4th 592 (7th Cir. 2021) (affirming the application of the rational basis review, finding that the University's vaccine mandate was neutral and of general applicability).

Further, the Policy has a rational basis due to the severity of the pandemic, including newly discovered variants and the need to prevent the spread of the disease. *Ciseneroz,* 2021 WL 5630778 *3; *See also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (Preventing the spread of COVID-19 is, at a minimum, a legitimate government interest); *Klaassen,* 7 F.4th at 593 ("vaccination requirements, like other public-health measures, have been common in this nation"); *Williams v. Trump*, 495 F.Supp.3d 673, 683 (N.D. Ill. 2020); *Village of Orland Park v. Pritzker*, 475 F.Supp.3d 866, 885 (N.D. Ill. 2020). The success in controlling the spread of COVID depends on developing immunities in all employees who have contact with each other and members of the public. The City's measures are rationally related to that legitimate interest.

### B. The Policy As Applied to Plaintiff Does Not Violate the Free Exercise Clause

Plaintiff's Free Exercise Clause claim, as applied, also fails. A party who raises an as-applied constitutional challenge to a policy must show that the policy as applied in the particular

circumstances of his case infringed on conduct that was constitutionally protected. *Broadrick v. Okla.*, 413 U.S. 601, 610-11 (1973). An employee denied a religious exemption may challenge that denial based on the particular facts of the case. *Troogstad v. City of Chicago*, 571 F. Supp. 3d 901, 917 (N.D. Ill. 2021).

Here, Plaintiff was granted a religious exemption from the vaccine mandate. (Compl. ¶ 20). Plaintiff has not alleged anti-religion animus, and the Policy did not favor any secular activity over a religious one. Rather, the basis of Plaintiff's claim is that his employment was allegedly terminated because he failed to comply with the Policy. (Compl. ¶22). Plaintiff conveniently overlooks and ignores that the Policy required employees such as Plaintiff who were granted a religious exemption to report their vaccination status and to submit to regular testing and report test results. Plaintiff asserts only that he had a religious objection to vaccination. He does not allege the reporting requirements violated any religious belief, and he did not request or receive any exemption from these Policy mandates. His assertion that he was granted an exemption "from the COVID-19 Policy as a whole" is contradicted by both the Policy and Determination Notice, both of which are incorporated into the Complaint and confirm he was still subject to the other Policy requirements. *Woods v. Amazon.com, LLC*, No. 17 C 4339, 2019 WL 2504093, at *2 (N.D. Ill. June 14, 2019) citing *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit to the complaint "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.")

Plaintiff's assertion that the City improperly weighed the legitimacy of his religious beliefs in determining to end his employment for violating the Policy's reporting requirements is directly contradicted by the fact that the City granted his religious exemption from the vaccination, but he did not seek or receive an exemption from the other aspects of the Policy. Therefore, his Complaint

is completely devoid of any factual allegation that the City applied the Policy in a manner that impermissibly or selectively burdened religiously motivated conduct. *See Does 1-11 v. Bd. of Regents of Univ. of Colorado*, No. 21-CV-02637-RM-KMT, 2022 WL 252320, at *4-5 (D. Colo. Jan. 27, 2022)) (dismissing as-applied challenge to neutrality when plaintiffs cannot point to anything to suggest that defendants implemented the policy to suppress religious beliefs, rather than protect the health and safety of students, staff, and the community); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 288-89 (2d Cir. 2021) quoting *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 276 (3d Cir. 2007).

Accordingly, the City's termination of Plaintiff's employment for his failure to comply with all aspects of the Policy, including the reporting requirements, did not violate the Free Exercise Clause. See *Troogstad*, 571 F. Supp. 3d at 917 (denials based on the failure to comply with the basic requirements of the Vaccination Policy do not raise free exercise concerns). Count II should be dismissed with prejudice.

**II.     PLAINTIFF DOES NOT STATE A VIABLE EQUAL PROTECTION CLAIM**

Plaintiff next attempts to repackage his free exercise claim as an equal protection claim. As an initial matter, when a free exercise challenge fails, any equal protection claims brought on the same grounds are subject only to rational-basis review." *Does 1-6 v. Mills*, 16 F.4th 20, 35 (1st Dist. 2021) citing, *inter alia*, *Locke v. Davey*, 540 U.S. 712, 720 n.3 (2004)); *Kane v. De Blasio*, 19 F.4th 152, 167 (2d Cir. 2021). Accordingly, Plaintiff's Equal Protection Clause challenge to the Policy fares no better than his First Amendment challenge.

Unless a classification burdens a fundamental right or targets a suspect class (i.e., race, religion, national origin or alienage), courts "presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a

legitimate state interest." *Del Marcelle v. Brown County Corp.*, 680 F.3d 887, 911 (7th Cir. 2012); *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 943 (7th Cir. 2009).

The Seventh Circuit has already held as a matter of law that the City's Policy does not burden a fundamental right or target a suspect class. *Troogstad,* 576 F. Supp. 3d at 584 *aff'd sub nom*. *Lukaszczyk*, 47 F.4th at 602. Accordingly, this Court should apply a rational basis review, asking whether the City's classification bears a rational relation to some legitimate end. *Id*. (applying rational basis standard of review to challenge to COVID-19 vaccine mandates); *Halgren v. City of Naperville*, 577 F.Supp.3d 700, 752 (N.D. Ill. 2021), *aff'd sub nom. Lukaszczyk,* 47 F.4th at 603 (applying rational basis of Equal Protection challenge to COVID-19 vaccination mandate); *Pritzker*, 475 F. Supp. 3d at 886 (applying rational-basis review to the Governor's Covid containment executive orders); *Cassell v. Snyders*, 458 F. Supp.3d 981, 999 (N.D. Ill. 2020).

"Under rational-basis review, a statutory classification comes to court bearing a strong presumption of validity, and the challenger must negate every conceivable basis which might support it." *Minerva Dairy, Inc. v. Harsdorf*, 905 F.3d 1047, 1053 (7th Cir. 2018) quoting *Ind. Petroleum Marketers & Convenience Store Ass'n v. Cook*, 808 F.3d 318, 322 (7th Cir. 2015).

Here, the Policy, including its classification of individuals as to whom requirements apply, is grounded in medicine and science, and thus is rationally related to the City's legitimate purpose of protecting its employees and Chicagoans "against an epidemic of disease [that] threatens the safety of its members." *Jacobson v. Mass.*, 197 U.S. 11, 27 (1905). As recognized by the Seventh Circuit, this is the case even if "the Vaccination Policy does not fully account for natural immunity or studies with contrary results, [as] under a rational basis review a government need only show that its rationale is supported by a reasonably conceivable state of facts." *Lukaszczyk*, 47 F.4th at 603. Therefore, Plaintiff's Equal Protection Clause claim should be dismissed with prejudice.

Furthermore, because Plaintiff cannot allege that the City demonstrated any animus or even weighed the legitimacy of Plaintiff's religious beliefs in determining to end his employment for violation of the Policy's reporting requirements, any as-applied challenge fails. Again, the requirements applied to all employees regardless of religious belief or whether one requested or received a religious exemption thereby negating any nexus to Plaintiff's religion. (Compl. ¶55 (V.B)). Though Plaintiff alleges the Policy was not generally applicable because other fire employees allegedly were not terminated for failing to report their COVID-19 status into the Portal, one's vaccination status is not a protected class. (Compl. ¶¶31, 32); *See gen. Savel v. MetroHealth Sys.*, No. 22-CV-2154, 2023 WL 4490395, at *8 (N.D. Ohio July 12, 2023); *Dollar v. Goleta Water Dist.*, No. 222CV03723CASMRWX, 2022 WL 5176904, at *4 (C.D. Cal. Oct. 3, 2022) (finding restrictions imposed on employees who are unvaccinated as opposed to vaccinated (i.e. biweekly tests, wearing N95 masks, refraining from entering certain buildings) are based on their vaccination status, not their religion and thus that distinction for different treatment does not violate the Equal Protection Clause). Accordingly, Plaintiff has not stated a valid as-applied claim.

For the reasons stated above, Count I should be dismissed with prejudice.

**III.   THE CITY HAD THE AUTHORITY TO ADOPT THE VACCINE POLICY**

Count III seeks declaratory judgment on the contention that "no legal authority has properly passed, pronounced, or enacted the [Policy] as City policy through lawful means." (Compl. ¶ 65) However, the Policy was well within the City's inherent authority. Chicago is a home rule unit and has been granted the power "to regulate for the protection of the public health, safety, morals, and welfare*." Iwan Ries & Co. v. City of Chicago*, 2019 IL 124469, ¶20 (2019). The Policy is limited to City employees, and the City's Municipal Code vests the Mayor with broad authority to "supervise the conduct of all the officers of the city." Chicago Mun. Code 2-4-020. The Municipal

Code also authorizes the Mayor to enact policies through an "administrative officer, subject to the direction and control of the mayor, … [to] supervise the administrative management of all city departments, boards, commissions and other city agencies." *Id*. By the plain language of these provisions, the Mayor has broad policymaking discretion over City employees.

Plaintiff's arguments on this point have been conclusively rejected by every court that has addressed the issue, and there is no justification for a different result here. *Troogstad,* 571 F. Supp. 3d at 914 (rejecting procedural due process arguments against the City, finding the Chicago Municipal Code by its plain language grants the Mayor broad policymaking discretion over City employees); *Ciseneroz,* 2021 WL 5630778, at *4 (holding the City was within its broad authority to adopt the vaccine mandate).

Most notably, Plaintiff's own union challenged the Policy on the exact same grounds, and the Circuit Court of Cook County held as a matter of law the City had authority to promulgate the Policy under the terms of the applicable collective bargaining agreement. *Chicago Firefighters Union, et al. v. City of Chicago, et al*., 2021 CH 05715 (Hon. Caroline K. Moreland), attached hereto as Exhibit B. Because the union was litigating this claim on Plaintiff's behalf, the doctrine of issue preclusion applies and bars Plaintiff from relitigating this issue in this Court. See *Proctor v. D.C.,* 74 F. Supp.3d 436, 452 (D.D.C. 2014) (Union members are considered to be in privity with their union for purposes of issue and claim preclusion); *Hitchens v. Cty of Montgomery*, 98 Fed. Appx. 106, 114 (3d Cir. 2004) ("[C]ourts have held union members to be in privity with the union and have held that a decision against a union can bind union members in a subsequent action."); *Monahan v. Dep't. of Corr.,* 214 F.3d 275, 285-86 (2d Cir. 2000) (recognizing that union members' interest are adequately represented by the union); *Meza v. Gen. Battery Corp*., 908 F.2d

1262, 1268 (5th Cir.1990) ("Federal courts have long recognized that individual members of labor unions ... can be bound by judgments in suits brought by the union....").

Any argument that the Policy violated the Separation of Powers doctrine because it was promulgated by the Mayor not the City Council also fails as a matter of law because "[s]tate and local governments need not follow the pattern of separated powers in the national Constitution." *Auriemma v. Rice*, 957 F.2d 397, 399 (7th Cir. 1992). As noted by Judge Lee in his opinion denying plaintiffs' temporary restraining order in *Troogstad,* the City Council voted to keep the vaccine mandate in place in late October 2021, thereby ratifying the Policy and removing any basis for plaintiffs' argument that the Mayor exceeded her authority. *Troogstad*, 571 F. Supp. 3d at 914.

As a matter of law, the City did not exceed its authority in adopting the Policy, and, as a result, Count III fails to state a claim.

## IV. PLAINTIFF HAS NOT STATED A VIABLE IRFRA CHALLENGE

Under IRFRA, the "[g]overnment may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person (i) is in furtherance of a compelling governmental interest and (ii) is the least restrictive means of furthering that compelling governmental interest." 775 ILCS 35/15. Courts have repeatedly declared that controlling the spread of COVID-19 constitutes a compelling interest. *Troogstad,* 576 F.Supp.3d at 585 ("Combating the COVID-19 pandemic is 'unquestionably a compelling interest'"); *Cuomo*, 141 S. Ct. at 68-69 ("Stemming the spread of COVID-19 is unquestionably a compelling interest..."); *Cassell,* 458 F. Supp. 3d at 1000 ("in these exceptional circumstances, controlling the spread of COVID-19 counts as a compelling interest"); *see also United States v. Saleron*, 481 U.S. 739, 755 (1987) (recognizing that the government's interest in "the safety of [its] citizens" is "compelling").

11

The Supreme Court has recognized compelling public interests can override religious beliefs: "We do not read RLUIPA[4] to elevate accommodation of religious observances over an institution's need to maintain order and safety. Our decisions indicate an accommodation must be measured so that it does not override other significant interests." *Cutter v. Wilkinson*, 544 U.S. 709, 722 (2005).

The Policy also furthers the interest of curtailing the spread of COVID-19 using the least restrictive means. Whether a practice is the "least restrictive means" turns on "whether [the government] could have achieved, to the same degree, its compelling interest" without interfering with religious activity. *Cassell*, 458 F. Supp. 3d at 1000; *Affordable Recovery Hous. v. City of Blue Island*, No. 12 C 4241, 2016 WL 5171765, at *8 (N.D. Ill. Sept. 21, 2016). Similar to the plaintiffs in *Cassell*, the Plaintiff fails to allege any less restrictive policy that would achieve the same result as the Policy that requires all employees to become fully vaccinated against COVID-19 absent an approved religious exemption. As with his Free Exercise claim, the availability of a religious exemption in appropriate cases ensures that the Policy does not unduly burden on any sincere religious beliefs and forecloses a facial challenge to the Policy under IRFRA.

Plaintiff also fails to assert a viable as-applied challenge to the Policy under IRFRA because he does not allege the Policy unduly burdened his religious belief. For purposes of IRFRA, "the hallmark of a substantial burden on one's free exercise of religion is the presentation of a

---

[4] The Religious Land Use and Institutionalized Persons Act (RLIUPA) is a federal law passed after the Supreme Court held the federal RFRA to be unconstitutional as applied to state and local governments in *City of Boerne v. Flores*, 521 U.S. 507 (1997). Courts apply the same standards under the federal RFRA, and RLIUPA in determining whether a particular government rules imposes a "substantial burden" on a religious belief. *See e.g. Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). Similarly, because the Illinois RFRA also was passed in direct response to the Supreme Court's *Boerne* decision specifically references pre-*Boerne* federal case law as the law to be applied in interpreting the IRFRA, federal cases interpreting the federal RFRA and RLIUPA directly apply in this case. *See Diggs v. Snyder*, 333 Ill. App. 3d 189, 194 (5th Dist. 2002); *World Outreach Conference Center v. City of Chi.*, 591 F.3d 531, 533 (7th Cir. 2009); *People v. Latin Kings Street Gang*, 2019 IL App (2d) 180610-U, ¶¶ 95, 113.

coercive choice of either abandoning one's free exercise of religious convictions or complying with the government regulation." *Diggs,* 333 Ill. App. 3d at 194-95. The only alleged burden on a religious belief imposed by the Policy was the vaccination requirement itself, and Plaintiff was granted a religious exemption from this requirement. Accordingly, the Policy did not impermissibly burden Plaintiff's alleged sincere religious belief but accommodated it. Plaintiff did not assert any burden imposed on a religious belief by the Policy's Portal requirements, and thus, his refusal to comply with the requirements constituted legitimate grounds for discharge and did not violate IRFRA. Even if he had, such an allegation would be insufficient. See *Joiner, et al, v. City of Chicago*, 2022 L 003085 (Hon. Mary Colleen Roberts), attached hereto as Exhibit C (dismissing IRFRA claim, finding Plaintiffs' placement on no pay status resulted from their failure to complete Portal requirements, which they were able to of regardless of religious objections).

## V.  THE TORT IMMUNITY ACT BARS PLAINTIFF'S CLAIMS

The TIA protects public entities from having to pay damages to individuals who are injured as a result of the actions or inactions of a public entity or its employees. The TIA applies to "any injury alleged in a civil action, whether based upon the Constitution of the United States or the Constitution the State of Illinois, and the statutes or common law of Illinois or of the United States." 745 ILCS 10/1-204; See also 745 ILCS 10/8–101(c) (one-year statute of limitations for a "civil action" under the TIA; "civil action" includes an action based upon the "Constitution of this State"). In particular, Section 6-104 of the TIA provides absolute immunity for discretionary policy decisions concerning whether to perform an act for the purpose of preventing disease or controlling the communication of a disease within the community. 745 ILCS 10/6104(a) ("Neither a local public entity nor a public employee is liable for an injury resulting from the policy decision to perform or not to perform any act to promote the public health of the community by preventing

disease or controlling the communication of disease within the community if such decision was the result of the exercise of discretion vested in the local public entity or the public employee, whether or not such discretion was abused.")

Here, the City's development and implementation of its Policy was discretionary in nature and served the purpose of preventing disease and controlling COVID-19 within its workforce, and by extension, the City's residents. Such actions fall squarely under the protections of Section 6-104, as found by the Cook County Circuit Court. *Joiner*, 2022 L 3085, Exhibit C. Thus, the City cannot be held liable for injuries resulting from its decision to adopt such a policy.

## VI. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiff alleges an Equal Protection claim in Count I and Free Exercise claim in Count II against the individual Defendants, but, in addition to the arguments set forth above, these counts should be dismissed against the individual Defendants on qualified immunity grounds. Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Taylor v. Ways*, 999 F.3d 478, 487 (7th Cir. 2021). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officers from harassment, distraction, and liability when they perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity gives public officials room to make reasonable but mistaken judgments about open legal questions, and, when properly applied, it protects all but the plainly incompetent or those who knowingly violate the law. *Abbott v. Sangamon County*, 705 F.3d 706, 713 (7th Cir. 2013).

Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant violated a right so clearly established "that every 'reasonable

official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Whether qualified immunity applies turns on two questions: (1) whether the facts presented, taken in the light most favorable to the plaintiff, describe a violation of a constitutional right; and (2) whether the federal right at issue was clearly established at the time of the alleged violation. *Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021).

Here, the individual Defendants are entitled to qualified immunity as the right to refuse to follow the clear mandates of the Policy – Plaintiff's refusal to comply with the Portal reporting requirements in light of the fact that he had not notified the City to a sincerely held religious belief to the reporting requirements – was neither a constitutional violation (as discussed above), nor a federal right that was clearly established at the time. Indeed, at the time, the City and the individual Defendants were carrying out requirements meant to ensure compliance with the City's vaccination mandate, and governing case law clearly held that employers may institute such policies as long as they offer reasonable accommodations to resolve a conflict between an employee's sincerely held religious belief and a condition of employment, unless such an accommodation would pose an undue hardship. *EEOC v. Walmart Stores East, L.P.*, 992 F.3d 656, 658 (7th Cir. 2021). Moreover, at the time of Plaintiff's discharge, two federal district courts as well as the Seventh Circuit had upheld the constitutionality of the Policy and had refused to enjoin its implementation. *Lukaszczyk*, 47 F.4th at 605-07; *Troogstad,* 571 F. Supp.3d at 908-18; *Ciseneroz,* 2021 WL 5630778, at *2-4. For these reasons, qualified immunity applies, and Counts I and II should be dismissed with prejudice against the individual Defendants.

## VII. CONCLUSION

For all the reasons set forth above and in the Defendants' Motion to Dismiss, Plaintiff's Complaint should be dismissed with prejudice in its entirety.

          Respectfully submitted,

          **THE CITY OF CHICAGO, ANNETTE NANCE-HOLT, BRIAN CASEY, PAUL COGSWELL**

          By: */s/ Erin K. Walsh*
           One of Their Attorneys

Michael A. Warner, Jr. (ARDC 6208011)
maw@franczek.com
Erin K. Walsh (ARDC 6313323)
ekw@franczek.com
FRANCZEK P.C.
300 S. Wacker Dr., Ste. 3400
Chicago, Illinois 60606
(312) 986-0300
(312) 986-9192 (Fax)

Dated: December 11, 2023

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT** to be filed with the Clerk of the Court using the CM / ECF Filing System and electronically serving the same upon the following counsel of record on this 11th day of December 2023:

>Cass T. Casper
>ccasper@dispartilaw.com
>Disparti Law Group, P.A.
>121 West Wacker Drive
>Suite 2300
>Chicago, IL 60601

>/s/ Erin K. Walsh – 6313323
>ekw@franczek.com