UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARCELLO VALLE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-14534 |
| v. | ) | |
| | ) | Honorable Judge Edmond E. Chang |
| CITY OF CHICAGO, Illinois, | ) | |
| ANNETTE NANCE-HOLT, in her | ) | |
| Individual capacity, BRIAN CASEY, | ) | |
| in his individual capacity, PAUL | ) | |
| COGSWELL, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff's claims in this case hinge on the unsupported premise that when the City of Chicago ("the City") approved Plaintiff's religious exemption from the City's COVID-19 vaccination requirement, it also exempted Plaintiff from all requirements of the City of Chicago's Vaccination Policy ("Policy") that did not infringe on any religious belief identified by Plaintiff, such as vaccination status reporting and test reporting. As set forth in detail below and in Defendants' Motion to Dismiss and supporting Memorandum, Plaintiff's Complaint should be dismissed in its entirety.

**I. PLAINTIFF'S FIRST AMENDMENT CLAIM SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM**

As explained in Defendants' opening Memorandum, Plaintiff's First Amendment challenge should be dismissed because the Policy did not impermissibly burden the free exercise of religion, and it was rationally related to a legitimate government interest. (Dkt. p. 4-7). The Seventh Circuit has already reviewed the City's Policy and determined it is constitutional. *Lukaszczky v Cook Cnty.*, 47 F.4th 587, 606-07 (7th Cir. 2022); *Troogstad v. City of Chicago*, No. 21-C-5600, Dkt. 88 (N.D. Ill. Jan. 1, 2024). *Lukaszczky* thus forecloses Plaintiff's facial challenge.

Plaintiff, however, urges the Court to apply a strict scrutiny standard of review. Plaintiff's citation to *Brandon v. Bd of Edu.*, 4:22-cv-00635-SRC, 2023 WL 4104293 (E.D. Miss. June 21, 2023), a non-binding district court case from another jurisdiction, is inapposite. In *Brandon*, despite maintaining a vaccination policy that provided for religious exemptions and representing that each request would receive individualized attention, the district categorically denied all 150 to 200 religious-exemption requests it received without the benefit of individualized review. *Id.* at *5-6. It then suspended or terminated the employment of those who refused to receive the vaccination, only later to reverse course and grant most of the exemptions and recall the suspended educators. *Id.* at *6-8. The court explained that time was available for reasoned, less immediate decision making, yet, the district still acted hastily to place a burden on plaintiffs' religious beliefs. *Id.* at *18. The district left the plaintiffs with the choice of losing their livelihoods or compromising their religious convictions.

Here, unlike *Brandon*, the Policy did not burden Plaintiff's religious beliefs, and he was not left with the same choice of abandoning those beliefs or losing his job. Plaintiff was granted a religious exemption request to the COVID-19 vaccine and was subsequently discharged for his continuous non-compliance with the Policy's testing and reporting requirements, which were quid pro quo conditions to his religious accommodation. (Dkt. 11-1). These requirements did not burden Plaintiff's purported religious belief "not to be vaccinated, but to rely on his God-given immune system." (Dkt. 1, ¶19).

Even if the Court were to apply a heightened standard, the Policy survives a First Amendment challenge because controlling the spread of COVID-19 constitutes a compelling interest, and Plaintiff's continued refusal to comply with the conditions of his religious accommodation was in clear defiance of the Policy and a direct order and jeopardized the City's

efforts to fight the pandemic. *See Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68-69 (2020) ("stemming spread of COVID-19 is unquestionably a compelling interest"); *Ill. Republican Party v. Pritzker*, 470 F. Supp.3d 813, 825 (N.D. Ill. 2020)(government has a compelling interest in fighting the pandemic).

Plaintiff's claim that the Policy was not generally applicable, as-applied also fails. Plaintiff alleges "the Policy was not generally applicable because in late 2021 and throughout 2022 numerous fire teams were asked to report their COVID-19 status and to be vaccinated, such teams refused, and the City did not terminate employees on such teams." (Dkt. 1, ¶46). This allegation does not support Plaintiff's claim because he admits he was not discharged for not reporting his vaccination status or not being vaccinated. To the contrary, as alleged, Plaintiff was provided a religious exemption to the COVID vaccine mandate, and his discharge resulted from his failure to comply with the conditions of that accommodation as set forth in the Determination Notice.

Plaintiff's argument that the City had lifted the testing requirements a few weeks prior to Plaintiff's discharge does not negate or excuse his non-compliance with the Policy and conditions of his accommodation while they were still in effect, which was the basis of his discharge.

Plaintiff's contention that the City read his exemption too narrowly and that he was exempt from the Policy "as a whole" is contradicted by his alleged exemption request and the Policy and Determination Notice, both of which are incorporated into the Complaint and confirm he was still subject to the other Policy requirements. *Woods v. Amazon.com, LLC*, No. 17 C 4339, 2019 WL 2323874 at *7 (N.D. Ill. June 14, 2019) quoting *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit to the complaint "incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.").

First, Plaintiff's exemption request only articulated a religious objection to vaccination, not reporting of vaccination status or test results. Second, the Vaccination Policy only allows for religious and medical exemptions to the COVID vaccine mandate. It does not permit employees to seek an exemption to the Policy "as a whole." Third, the Determination Notice expressly provided that his accommodation to the COVID vaccine was conditioned on Plaintiff complying with the "masking, social distancing, and testing requirements in the Policy until further notice." The Policy expressly provides that employees who are exempt from vaccination must comply with these other requirements:

> <u>Employees</u>, volunteers, and contractors who are covered by this <u>policy who are not vaccinated, for reasons including but not limited to verified medical conditions or restrictions or sincerely held religious beliefs (as discussed in Section VI), must undergo COVID-19 testing on a twice weekly basis with tests separated by 3-4 days.</u> Employees shall be responsible for obtaining tests on their own time and at no cost to the City and reporting those results in the manner described by Section VII below.
> * * *
> Violations of this policy, including but not limited to, non-compliance with this Section; or providing false or misleading information about vaccination status, test results, or the need for an accommodation; or the failure to test as applicable as discussed in Section VII, will result in disciplinary action up to and including discharge.
>
> **VII. Reporting Test Results**
> * * *
> B. Employees must report their test results through the COVID-19 Employee Testing Portal. Employees will be required to submit the following information: 1. The date of the test; 2. The type of test obtained; 3. The results of the test; 4. A declaration that the information provided is true and accurate; and, 5. A copy of their test results.
> * * *
> D. Employees who fail to report test results as required by this section will be placed in a non-disciplinary no-pay status until they report their test results

Plaintiff's interpretation of the City's accommodation contradicts both the plain language of the Policy and the City's Determination Notice granting his exemption. Plaintiff has not pled the City applied the Policy in a manner that impermissibly or selectively burdened religiously

4

motivated conduct, and the City's termination of Plaintiff's employment for his failure to comply with all aspects of the Policy, including the testing and reporting requirements, did not violate the Free Exercise Clause. *Troogstad v. City of Chicago*, 571 F. Supp. 3d 901, 917 (N.D. Ill. 2021) (denials based on the failure to comply with the basic requirements of the Vaccination Policy do not raise free exercise concerns); *See Does 1-11 v. Bd. of Regents of Univ. of Colorado*, No. 21-CV-02637-RM-KMT, 2022 WL 252320, at *4-5 (D. Colo. Jan. 27, 2022) (dismissing as-applied challenge to neutrality when plaintiffs cannot point to anything to suggest that defendants implemented the policy to suppress religious beliefs, rather than protect the health and safety of students, staff, and the community); *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 288-89 (2d Cir. 2021) quoting *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 276 (3d Cir. 2007). The Court should therefore dismiss Count II with prejudice.

## II. PLAINTIFF DOES NOT STATE A VIABLE EQUAL PROTECTION CLAIM

*Lukaszczky* also forecloses Plaintiff's facial Equal Protection challenge. *Lukaszczyk*, 47 F.4th at 602. Plaintiff does not respond to the City's arguments that the Equal Protection Clause is inapplicable. Instead, he argues the City's termination of his employment was not rationally related to controlling COVID-19. The Court need not reach this issue because Plaintiff has not identified a protected class to state a claim under the Equal Protection Clause.

"[T]he Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently." *Engquist v. Or. Dep't of Agric.,* 553 U.S. 591, 605 (2008). "This type of equal protection claim requires a plaintiff to show that "defendants acted with a nefarious discriminatory purpose and discriminated against him based on is membership in a definable class." *McCormick v. Chicago TransitAuth.,* No. 23 C 1998, 2023 WL 5608000, at *2 (N.D. Ill. Aug. 30, 2023) (citing

*Word v. City of Chicago,* 946 F.3d 391, 396 (7th Cir. 2020)). "[T]he class-of-one theory of equal protection," that is, that an individual plaintiff was arbitrarily singled out for disparate treatment, "does not apply in the public employment context." *Engquist,* 553 U.S. at 598.

As explained in the City's Memorandum, even viewed in the light most favorable to Plaintiff, his allegations do not support that the City discriminated against a definable class of people. Plaintiff alleges only that his disparate treatment was based on his unique application for exemption. He does not allege that the City terminated his employment because he is a Christian, that the City treated Christians differently than other people, or that the City treated other Christians, or even other religious people, as it treated *him*. This is exactly the kind of class-of-one claim that the Supreme Court has rejected in the public employment context. *Id.* The Court should therefore dismiss Count I with prejudice.

### III. PLAINTIFF FAILS TO STATE A CLAIM THAT THE VACCINATION POLICY WAS NOT "PROPERLY ADOPTED"

Count III amounts to a "Declaratory Judgment" action purportedly alleging that the City did not properly adopt the Vaccination Policy, therefore, the Policy is "void under Illinois law." (Dkt. 21, p. 12) As explained in the Memorandum, the Mayor has broad authority to enact policies over City employees. (Dkt. 11, p. 9-11). It was the Mayor who enacted the Policy, and the City Council reaffirmed the Policy and subsequently voted to keep it in place on late October 2021.[1] Plaintiff's arguments on this point have been conclusively rejected by every court that has addressed the issue, and there is no justification for a different result here. *Troogstad*, 571 F. Supp.3d at 914 (rejecting procedural due process arguments, finding the Chicago Municipal Code

---

[1] In fact, on October 29, 2021, a draft Ordinance was introduced that would have rendered the Vaccination Policy null and void. The Ordinance did not pass. *See* Legislative Details and Draft Ordinance, attached at Exhibit A. *See Horwitz-Matthews, Inc. v. City of Chicago*, No. 94 C 5995, 1995 WL 76889, *3 (N.D. Ill. Feb. 21, 1995) (court may take judicial notice of proposed ordinance).

by its plain language grants the Mayor broad policymaking discretion over City employees); *Ciseneroz v. City of Chicago*, No. 21-CV-5818, 2021 WL 5630778, *4 (N.D. Ill. Dec. 1, 2021) (holding the City was within its broad authority to adopt the vaccine mandate).

Most recently, the Illinois Appellate Court affirmed Judge Moreland's decision, which was cited in Defendants' Memorandum and held as a matter of law that the City had the authority to promulgate the Vaccination Policy under the terms of the collective bargaining agreement that applied to Plaintiff and that the "Vaccination Policy was a valid exercise of the City's authority." *Chicago Fire Fighters Union, et al v. City of Chicago, et al.*, No. 1-23-0550, 2024 Ill. App (1st) 230550-U, Exhibit B. Like Plaintiff, the union argued that the Vaccination Policy is *ultra vires* and *void ab initio* because it was not adopted in conformance with the procedural requirements of the Municipal Code of Chicago. The court rejected such argument finding that CBA Section 17.1 and 17.2, which pertains to the City's right to establish new or revised rules applicable to the union and its members, superseded the municipal requirement and therefore, the Vaccination Policy was not void. *Id*. ¶23. Plaintiff does not contest the City's argument that issue preclusion bars Plaintiff from relitigating this issue and therefore has waived any such argument. *See Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument ... results in waiver.").

IV. **PLAINTIFF HAS NOT STATED A VIABLE IRFRA CHALLENGE**

As with the Free Exercise claim, the availability of a religious exemption in appropriate cases ensures that the Policy does not unduly burden any sincere religious belief and forecloses a facial challenge to the Policy under IRFRA. *Lukaszczky,* 47 F.4th at 607; *Troogstad,* No. 21-C-5600, Dkt. 88. Plaintiff's as-applied challenge also fails because he does not allege the Policy unduly burdened his religious belief. The only alleged burden imposed by the Policy was the vaccination requirement itself, and the City accommodated Plaintiff by granted a religious exemption from this requirement. *See, e.g., Schneider v. City of Chicago*, No. 22 CV 1031, 2023

WL 8019434, *3-10 (N.D. Ill. Nov. 20, 2023) (granting motion to dismiss on IRFRA claim where plaintiffs did not apply for and were not denied a religious exemption). The Determination Notice also shows that the City utilized many of the "less restrictive means" highlighted by Plaintiff. That Plaintiff failed to follow these means further justifies his discharge. Plaintiff's claim is baseless, and Count III should be dismissed.

**V.     THE TORT IMMUNITY ACT BARS PLAINTIFF'S REQUEST FOR MONETARY DAMAGES**

The Tort Immunity Act (TIA) applies to Plaintiff's claims as it broadly defines "injuries" to include "any injury alleged in a civil action, whether based upon the Constitution of the United States or the Constitution of the State of Illinois, and the statutes or common law of Illinois or of the United States." 745 ILCS 10/1-204. The TIA also enumerates when it does not apply. 745 ILCS 10/2-101 (listing the Metropolitan Transit Authority Act, Workers' Compensation Act, Workers' Occupational Diseases Act, Illinois Municipal Code, and Illinois Uniform Conviction Information Act). Indeed, the Illinois Supreme Court and this Court have "admonished against reading exceptions into or engrafting tacit limitations onto the Tort Immunity Act's language." *Epstein v. Chicago Bd. of Edu.*, 178 Ill.2d 370, 376, 687 N.E.2d 1042, 1046 (1997); *Weiler v. Vill. of Oak Lawn,* 86 F.Supp.3d 874, 886 (N.D. Ill. 2015) ("Illinois courts have been reticent to infer exceptions that are not expressly stated in the Tort Immunity Act.").

Here, Section 6-104(a) is clear and unambiguous. The lack of case law applying Section 6-104 is presumably due to the infrequency of pandemics, but Plaintiff does not distinguish his situation from *Joiner v. City of Chicago*, which applied Section 6-104(a) to bar plaintiffs' claims against the City for its implementation of the Vaccination Policy that led to the plaintiffs' discharge. Plaintiff's assertion that Section 6-104(b) applies is unpersuasive because the plain language of that subsection clearly applies to the administration of medical treatment, which is not alleged.

Plaintiff's argument that the TIA would render the IRFRA toothless was expressly rejected by the Court in *Schneider v. City of Chicago*. There, the court held that "the TIA can be read in concert with IRFRA to state that local governments are immune from damage claims, but not claims for injunctive or other forms of relief authorized by IRFRA." 2023 WL 8019434 *4 Therefore, these two statutes are not in conflict. This is consistent with Illinois Supreme Court precedent, which instructs that public entities when acting in a manner within the scope of the TIA are immune from a claim for monetary damages "based upon the Constitution of the United States or the Constitution of the State of Illinois, and the statutes or common law of Illinois or the United States." 745 ILCS 10/1-204; *Strauss v. City of Chicago*, 2022 IL 127149, ¶ 76, 215 N.E.3d 87; *see also Kozlov v. City of Chicago*, No. 21 C 6904, 2022 WL 602221, at *n.4 (N.D. Ill. Feb. 28, 2022) (expressing doubt plaintiff could recover monetary damages under TIA for constitutional and state law claims resulting from implementation of Public Health Order 2021-2).

Applying this precedent and in accordance with the plain language of the statute, Section 6-104(a) bars Plaintiff's claims for monetary damages stemming from the City's implementation of the Vaccination Policy, including Plaintiff's discharge for violating said Policy.

### VI. INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Defendants' Memorandum sets forth the reasons why the individual Defendants are entitled to qualified immunity and should be dismissed from the case altogether. Once again, as discussed above, Plaintiff's response is premised upon the implausible belief that his request to be exempted from the vaccination requirement led to a full exemption from any and all employee obligations that flowed from the Policy.

It is Plaintiff's burden to show that the rights allegedly violated were so clearly established at the time of the alleged violation that every reasonable official would have understood that his

9

or her actions were in violation of the law. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Plaintiff has not met this burden. Notably, qualified immunity warranted the dismissal of an almost identical case in *MacDonald v. Oregon Health & Science University*, No. 3:22-cv-01942-IM, 2023 WL 5529959 (D. Ore. Aug. 28, 2023). Yet, Plaintiff completely ignored the case, and made no effort to address why the outcome should be different here.

Instead, Plaintiff cited three cases. The first case, *Lukaszczyk,* 47 F. 4th 587 (7th Cir. 2022), was decided by the Seventh Circuit a mere eight weeks before Plaintiff's alleged discharge. Further, it is difficult to discern from Plaintiff's response what right he believes was clearly established by this case. There, the Seventh Circuit held that plaintiffs were unlikely to succeed on the merits without evidence of how the religious exemption is applied in practice. Similarly, Plaintiff does not explain the clearly established right demonstrated by *Employment Div. v. Smith*, 494 U.S. 872 (1990), wherein the U.S. Supreme Court found that a law criminalizing peyote use did not violate the Free Exercise Clause even when applied to individuals who used peyote for religious purposes. Plaintiff's reliance upon *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021) also faces similar problems in that it dealt with a city's refusal to grant a religious foster care service an exemption from a requirement that it certify same-sex couples. There is nothing in any of these cases that would have put the individual Defendants on notice that they could be violating the Plaintiff's constitutional rights – let alone a clearly established right – by ending his employment pursuant to his non-compliance with the Vaccination Policy and Determination Notice. The individual Defendants are entitled to qualified immunity.

**VII. CONCLUSION**

For all the reasons set forth above and in Defendants' Motion to Dismiss and Memorandum of Law, Plaintiff's Complaint should be dismissed with prejudice.

        Respectfully submitted,

        **THE CITY OF CHICAGO, ANNETTE NANCE-HOLT, BRIAN CASEY, PAUL COGSWELL**

        By: */s/ Erin K. Walsh*
         One of Their Attorneys

Michael A. Warner, Jr. (ARDC 6208011)
maw@franczek.com
Erin K. Walsh (ARDC 6313323)
ekw@franczek.com
FRANCZEK P.C.
300 S. Wacker Dr., Ste. 3400
Chicago, Illinois 60606
(312) 986-0300
(312) 986-9192 (Fax)

Dated: February 9, 2024

3281549.2

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that she caused a true and correct copy of the foregoing **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** to be filed with the Clerk of the Court using the CM / ECF Filing System and electronically serving the same upon the following counsel of record on this 9th day of February 2024:

> Cass T. Casper
> ccasper@dispartilaw.com
> Disparti Law Group, P.A.
> 121 West Wacker Drive
> Suite 2300
> Chicago, IL 60601

/s/ Erin K. Walsh – 6313323
ekw@franczek.com
